IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

RHODES COLLEGES, INC. d/b/a          §
EVEREST COLLEGE, et al.,             §
                                     §
                     Plaintiffs,     §
                                     §   Civil Action No. 3:10-CV-0031-D
VS.                                  §
                                     §
JULIE E. JOHNSON, Individually, et al., §
                                     §
                     Defendants.     §

MEMORANDUM OPINION
AND ORDER

In this action by a for-profit school against two lawyers and their law firms arising

from allegedly defamatory statements made about the school on websites, the court addresses

whether the lawyers are entitled to summary judgment based on the affirmative defenses of

the attorney immunity doctrine and judicial proceedings privilege.   Concluding that

defendants have not met their heavy burdens under the beyond peradventure standard, the

court denies their motion in part.   The court concludes, however, that two defendants—a

lawyer and her law firm—are entitled to summary judgment on other grounds and therefore

grants the motion to that extent.   The court denies plaintiffs' motion for partial summary

judgment, in which they seek to establish as a matter of law that certain defendants

maliciously published a false and defamatory statement, concluding that they, too, have

failed to meet their heavy burden under the beyond peradventure standard.

I

Defendant Julie E. Johnson, Esquire ("Johnson"), is an attorney who specializes in consumer rights, including bringing lawsuits against for-profit schools.[1]  Johnson and defendant Kay L. Van Wey, Esquire ("Van Wey"), were partners of the law firm of defendant Van Wey & Johnson, L.L.P. ("VW&J") at the time Johnson posted the allegedly defamatory content.  In 2009 Johnson and Van Wey decided to form independent law firms, and in May 2009 Johnson formed the Law Office of Julie Johnson, P.L.L.C. ("LOJJ").  When Johnson started her own law firm, she transferred the educational fraud content from the VW&J website to her new firm website.

Johnson maintains that in January 2009 she was contacted by students of Everest College, who began signing formal engagement letters around that time.  In May 2009 Johnson met with and signed engagement letters with two additional former Everest College

---

[1]Both sides have moved for summary judgment.  As the court has stated in cases like *AMX Corp. v. Pilote Films*,

> [b]ecause both parties have filed motions for summary judgment, the court will principally recount only the evidence that is undisputed.  If it is necessary to set out evidence that is contested, the court will do so favorably to the party who is the summary judgment nonmovant in the context of that evidence. In this way it will comply with the standard that governs resolution of summary judgment motions.

*AMX Corp. v. Pilote Films*, 2007 WL 1695120, at *1 n.2 (N.D. Tex. June 5) (Fitzwater, J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)), *modified in part on other grounds*, 2007 WL 2254943 (N.D. Tex. Aug. 7, 2007) (Fitzwater, J.).

- 2 -

students.  A few days following the meeting, Johnson amended the "educational fraud" content of her law firm website to specifically refer to Everest College.  Johnson posted on her current and former law firm websites statements such as:

- "When schools promise far more than they can possibly deliver, that's educational fraud.  At the [VW&J] law firm in Dallas, our attorneys have represented hundreds of students in confronting educational fraud at Everest College and other for-profit educational institutions[.]"  Am. Compl. ¶ 25 (emphasis omitted).

- "When the lawyers at [VW&J] began getting calls from students at Everest College, we began to investigate.  Everest College was promising to prepare students for lucrative careers.  The truth was far different.  The school is not accredited.  They are in the education business for one reason - to make a profit."  *Id.* (emphasis omitted).

- "You can find them on the Internet and on TV.  For-profit 'schools' like Everest College promise that upon graduation, students will have certification in their chosen field.  That is not true."  *Id.* (emphasis omitted).

- "If you have been cheated by a for-profit school, know that you are not alone.  We have represented hundreds of students.  You do not have to face the school alone.  Our attorneys will stand with you against educational fraud."  *Id.* (emphasis omitted).

- Under the heading "Proprietary School Fraud—Everest College": "Students spend their time and money on programs that they discover will not even transfer to other schools."  *Id.* at ¶ 33 (emphasis omitted).

- Under the heading "Proprietary School Fraud—Everest College": "Unfortunately, schools often misrepresent facts concerning potential jobs, starting salaries and the school[']s . . . own placement services offered to graduating students."  *Id.* at ¶ 39 (emphasis omitted).

- Under the heading "Proprietary School Fraud—Everest College": "School admissions representatives are sometimes nothing more tha[n] cheap sales representatives who make huge commissions on each person they get signed up and who[] . . . apply for student loans."  *Id.* at ¶ 43 (emphasis omitted).

In August 2009 Johnson filed suit in Texas state court against Rhodes Colleges, Inc. d/b/a Everest College and Rhodes Business Group, Inc. d/b/a Everest College (collectively, "Everest") on behalf of 13 former Everest College students (the "Student Lawsuit"), alleging violations of the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), fraud, and breach of contract.[2]

In January 2010 Everest filed a grievance against Johnson with the State Bar of Texas alleging, *inter alia*, that she and her law partner, Van Wey, had made several false, misleading, and deceptive statements against Everest on the VW&J website and on www.juliejohnsonlaw.com.  The State Bar grievance was later dismissed.

In January 2010 Everest also filed the instant lawsuit against Johnson, LOJJ, VW&J, Van Wey Law, P.L.L.C. ("VWL"), and Van Wey.  In its amended complaint, Everest asserts claims for common law libel *per se*, statutory libel *per se* under Tex. Civ. Prac. & Rem. Code Ann. § 73.001 (West 2011), business disparagement, and tortious interference with contract.

Defendants moved for summary judgment, arguing that the attorney immunity doctrine precluded Everest's claims and that there was no legal or factual basis for the claims against Van Wey, individually, or against VWL.  In their reply brief, defendants for the first time raised the argument that defendants were entitled to summary judgment because the

---

[2]The Student Lawsuit is being arbitrated, but neither side maintains that the fact that this litigation is in arbitration materially affects the analysis of defendants' affirmative defenses.

judicial proceedings privilege applied to the statements on which Everest relies.  Everest moved to strike this argument because it had been raised for the first time in reply.  The court denied the motion to strike, instead permitting Everest to file a surreply and supplemental evidence appendix to address the judicial proceedings privilege.  The court also permitted Johnson to file a final reply.

Everest moves for partial summary judgment establishing that three defendants maliciously published this allegedly false and defamatory statement: "The school is not accredited."

## II

When a party moves for summary judgment on a claim for which the opposing party will bear the burden of proof at trial, the moving party can meet her or its summary judgment obligation by pointing the court to the absence of admissible evidence to support the opposing party's claim.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party does so, the opposing party must go beyond her or its pleadings and designate specific facts showing there is a genuine issue for trial.  *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  An issue is genuine if the evidence is such that a reasonable jury could return a verdict in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The opposing party's failure to produce proof as to any essential element of a claim renders all other facts immaterial.  *See Trugreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007 ) (Fitzwater,

J.).  Summary judgment is mandatory if the opposing party fails to meet this burden.  *Little*, 37 F.3d at 1076.

When a party moves for summary judgment on a claim or defense on which she or it will have the burden of proof at trial, the party "must establish 'beyond peradventure all of the essential elements of the claim or defense.'"  *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) ( Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)).  This means that the moving party must demonstrate that there are no genuine and material fact disputes and that the party is entitled to summary judgment as a matter of law.  *See Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003).  "The court has noted that the 'beyond peradventure' standard is 'heavy.'"  *Carolina Cas. Ins. Co. v. Sowell*, 603 F.Supp.2d 914, 923 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.)).

### III

Defendants move for summary judgment on the ground that Everest's claims are barred by the attorney immunity doctrine.

### A

"Texas courts have long held that attorneys cannot be held civilly liable for damages to non-clients, under any theory of recovery, for actions taken in connection with representing a client."  *Reagan Nat'l Adver. of Austin, Inc. v. Hazen*, 2008 WL 2938823, at

*2 (Tex. App. July 29, 2008, no pet.) (mem. op.) (citing *Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 405 (Tex. App. 2005, pet. denied)).  "This doctrine—often termed 'attorney immunity'—derives from the policy goal of protecting the public's . . . interest in loyal, faithful and aggressive representation by the legal profession." *Id.* (quoting *Bradt v. West*, 892 S.W.2d 56, 71 (Tex. App. 1994, writ denied) (some internal quotation marks and brackets omitted).  The attorney immunity doctrine "recognizes that '[i]f an attorney could be held liable to an opposing party for statements made or actions taken in the course of representing his client, he would be forced constantly to balance his own personal exposure against his client's best interest.'" *Id.* (quoting *Alpert*, 178 S.W.3d at 405).

"Whether immunity attaches turns on the type of conduct in which the lawyer is engaged, not whether the conduct was meritorious in the context of the underlying litigation." *Id.* at *3 (citing *Alpert*, 178 S.W.3d at 406; *Bradt*, 892 S.W.2d at 72).  "[T]he dispositive question is whether the attorney's conduct was part of the discharge of his duties in representing a party in a lawsuit." *Taco Bell Corp. v. Cracken*, 939 F. Supp. 528, 532 (N.D. Tex. 1996) (Fitzwater, J.) (citing *Bradt*, 892 S.W.2d at 72) (applying Texas law).  "The types of conduct to which immunity applies are those involving 'the office, professional training, skill, and authority of an attorney.'" *Reagan*, 2008 WL 2938823, at *3 (citations omitted).  "[E]ven when acting in a representative capacity, attorneys are not immune from liability when they engage in conduct that a non-attorney could have performed." *Dixon Fin. Servs., Ltd. v. Chang*, 325 S.W.3d 668, 682 (Tex. App. 2010, pet.

denied).

Defendants maintain that the allegedly defamatory statements about Everest College on the websites are protected by the attorney immunity doctrine because the statements were made in an attempt to identify witnesses who might also become clients and who had had unsatisfactory experiences with Everest.  They contend that their clients' claims against Everest would have been strengthened had they been able to identify additional students whose testimony would corroborate the testimony of Johnson's current clients.  Defendants also posit that Johnson knew from experience that her website was important in enabling former employees of for-profit schools to contact her regarding their willingness to cooperate.

## B

Because the doctrine of attorney immunity is an affirmative defense, *see Reagan*, 2008 WL 2938823, at *4 ("attorney immunity is considered an affirmative defense"), to be entitled to summary judgment, defendants must establish the merits of their defense beyond peradventure.  *See Bank One*, 878 F. Supp. at 962 (quoting *Fontenot*, 780 F.2d at 1194).  But defendants have not established under this "heavy" burden that posting the allegedly defamatory statements about Everest College on the websites was part of the discharge of Johnson's duties in representing the three clients[3] who had retained her at the time the

---

[3]It is unclear how many clients Johnson had already agreed to represent in the Student Lawsuit at the time she posted the allegedly defamatory statements.  She avers that she "began signing formal engagement letters with students of Everest in January 2009."  Ds. 11/4/10 App. 2.  The court therefore assumes that she had at least one client as of January

statements were posted.  *See Taco Bell*, 939 F. Supp. at 532.  Defendants maintain that

Johnson used her website to secure additional evidence and witnesses.  In her declaration,

Johnson avers:

> I knew that the website could be used as a vehicle to identify
> witnesses, both former students and in some cases former
> employees, who had knowledge of Everest's admissions
> process.  In my past experiences, witnesses, including former
> employees of the for-profit school, who wanted to assist the
> students in prosecuting their claims, have contacted our firm
> after locating information about for-profit schools on our
> website.

Ds. 11/4/10 App. 2.  But a reasonable trier of fact would not be required to find that Johnson

was only using the websites to obtain evidence or secure witnesses to support her *existing*

clients' cases.  For example, defendants have not adduced evidence that Johnson alerted

website visitors that she was seeking corroborating evidence from Everest students or

employees who were willing to testify against the school.

   Statements posted on the www.vanweyjohnson.com website included the following:

"Don't let Everest College and other schools get away with educational fraud," "Our

attorneys will stand with you against educational fraud," and "Contact the [VW&J] law firm

for a free consultation." Ps. 11/14/11 App. 95.  Similarly, on the www.juliejohnsonlaw.com

website, Johnson included the same statement: "Our attorneys will stand with you against

---

2009.  Johnson also testifies that two clients signed engagement letters in May 2009.  The
court therefore assumes that, as of May 22, 2009, the date the allegedly defamatory
statements were posted, Johnson had agreed to represent at least three former Everest College
students.

educational fraud," and posted contact information for a "Free Consultation."  *Id.* at 101.

Evidence such as this—i.e., offering free consultation to students who have "been cheated

by a for-profit school," *id.* at 95, 101, would enable a reasonable trier of fact to find that

Johnson was using her website to attract *new* clients, not to gather evidence for her *existing*

cases.  In fact, Johnson conceded during her deposition that her websites had a "split

purpose[]," one aspect of which was advertising.  *Id.* at 45.

Texas courts have applied the attorney immunity doctrine to an attorney's conduct

in representing *existing* clients.  *See*, *e.g.*, *Reagan*, 2008 WL 2938823, at *4-9 (holding

attorney immunity doctrine protected attorney from suit based on legal advice to his clients,

in context of a pre-litigation property dispute); *Dixon Fin. Servs., Ltd. v. Greenberg, Peden,*

*Siegmyer & Oshman, P.C.*, 2008 WL 746548, at *8-9 (Tex. App. Mar. 20, 2008, pet. denied)

(mem. op.) (on rehearing) (holding that attorney immunity doctrine protected attorney from

suit based on post-judgment actions taken to secure stock awarded to clients by arbitration

award).  Johnson has cited no authority, and the court has found none, for the proposition

that the Texas attorney immunity doctrine protects an attorney's acts in soliciting *new*

clients.

Because defendants have not established beyond peradventure that the allegedly

defamatory statements were published in an attempt to obtain corroborating witnesses to

support the cases of existing clients, they have not met their summary judgment burden

under the attorney immunity doctrine, and this ground of their motion is denied.[4]

IV

Defendants also move for summary judgment dismissing Everest's defamation claims based on the judicial proceedings privilege.

A

Under Texas law, "[c]ommunications in the due course of a judicial proceeding will not serve as the basis of a civil action for libel or slander, regardless of the negligence or malice with which they are made." *James v. Brown*, 637 S.W.2d 914, 916 (Tex. 1982) (per curiam) (citing *Reagan v. Guardian Life Ins. Co.*, 166 S.W.2d 909 (Tex. 1942)). This absolute privilege extends not only to statements made during litigation, but also to statements made by counsel in contemplation of, and preliminary to, judicial proceedings. *See id.* at 917; *see also Watson v. Kaminski*, 51 S.W.3d 825, 827 (Tex. App. 2001, no pet.). As explained in the Restatement (Second) of Torts ("Restatement"), which Texas follows:

---

[4]In their final reply, defendants argue that their alleged actions in "(1) [in]appropriately contacting employees of Everest, (2) meritlessly naming employees in lawsuits, and (3) engaging recruiters to solicit students on campus to become . . . clients," are also protected by the attorney immunity doctrine and thus cannot form the basis for Everest's business disparagement and tortious interference claims. Ds. 11/28/11 Reply Br. 7 (citations omitted). The court will not consider this argument, however, because it has been presented for the first time in a reply brief. *See, e.g.*, *Jacobs v. Tapscott*, 2006 WL 2728827, at *7 (N.D. Tex. Sept. 25, 2006) (Fitzwater, J.) (citing *Senior Unsecured Creditors' Comm. of First RepublicBank Corp. v. FDIC*, 749 F. Supp. 758, 772 (N.D. Tex. 1990) (Fitzwater, J.)), *aff'd*, 277 Fed. Appx. 483 (5th Cir. 2008).

> [a]n attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding.

Restatement (Second) of Torts § 586 (1977); *see Russell v. Clark*, 620 S.W.2d 865, 868 (Tex. Civ. App. 1981, writ ref'd n.r.e.) ("In our view, a correct statement of the law is found in the Restatement of Torts (Second), section 586[.]").  As noted in the Restatement, however, the judicial proceedings privilege has limits.  Under Texas law, "[t]he act to which the privilege applies must bear some relationship to a judicial proceeding in which the attorney is employed, and must be in furtherance of that representation."  *Russell*, 620 S.W.2d at 868.  "Whether a lawyer's out-of-court statement is related to a proposed or existing judicial proceeding is a question of law to be determined by the court."  *Dall. Indep. Sch. Dist. v. Finlan*, 27 S.W.3d 220, 239 (Tex. App. 2000, pet. denied) (citing *Russell*, 620 S.W.2d at 870).  When deciding the issue, the court must consider the entire communication in its context and extend the privilege to any statement that bears some relationship to an existing or proposed judicial proceeding.  *Watson*, 51 S.W.3d at 827; *Russell*, 620 S.W.2d at 870.  All doubt should be resolved in favor of the communication's relevance to the proceeding.  *See Finlan*, 27 S.W.3d at 239; *Russell*, 620 S.W.2d at 870.

Defendants maintain that the judicial proceedings privilege applies because the allegedly defamatory statements were made in furtherance of contemplated litigation, i.e., the Student Lawsuit that Johnson intended to and did file against Everest fewer than 90 days

- 12 -

after the statements about Everest were posted to her website.  In support of this argument, defendants cite Johnson's declaration in which she avers that "the Everest website content was published as a vehicle to identify witnesses and additional potential clients who would bolster the claims of her existing clients."  Ds. 8/19/11 Reply Br. 4 (citing Ds. 8/19/11 App. 2).

## B

Like the attorney immunity doctrine, the judicial proceedings privilege is an affirmative defense.  *See, e.g., Quality Infusion Care, Inc. v. Health Care Serv. Corp.*, 2011 WL 6938518, at *4 (Tex. App. Dec. 29, 2011, no pet.) (mem. op.) ("The judicial-proceeding privilege is a defense the defendant has the burden to establish as a matter of law." (citation omitted)).  Defendants must therefore establish this defense under the heavy beyond peradventure standard.

Under Texas law, the judicial proceedings privilege applies to an attorney's defamatory statements made when attempting to obtain evidence for proposed or pending litigation.  *See Russell*, 620 S.W.2d at 870.  In *Russell* the court held that defamatory statements in a letter seeking evidence from certain investors were absolutely privileged because the letter bore a relationship to the litigation about which it was written and appeared to be designed to obtain information that could be used as evidence.  *Id.* Accordingly, if defendants can prove, for example, that the allegedly defamatory statements on the website were, as Johnson argues, an "ingenious method[ ] to obtain evidence" for a

proposed or pending lawsuit, Ds. 8/19/11 Reply Br. 5 (quoting *Finlan*, 27 S.W.3d at 238-39), defendants would be entitled to defeat Everest's defamation claims based on the judicial proceedings privilege.

But defendants have not met this burden under the heavy beyond peradventure standard because they have not demonstrated that a reasonable trier of fact could only find that the allegedly defamatory statements were posted in an attempt to identify witnesses or gather evidence. As the court has already explained in addressing the attorney immunity doctrine, there is evidence in the summary judgment record that would enable a reasonable trier of fact to find that Johnson was using her website to attract *new* clients, not to gather evidence (or locate corroborating witnesses) for her *existing* cases.

Accordingly, this ground of the motion is denied.[5]

## V

Defendants move for summary judgment dismissing all of Everest's claims against Van Wey and VWL.[6]

---

[5]Everest has filed a motion for leave to file a surreply or, alternatively, for oral argument so that it can address a Tennessee Supreme Court opinion that defendants cite in their final reply. Because the court is denying the portion of defendants' motion for summary judgment that relates to the opinion, it denies Everest's motion for leave to file a surreply.

[6]Everest moved to "drop" VWL as a defendant under Fed. R. Civ. P. 21. The court denied the motion without prejudice on the ground that Everest was actually moving for dismissal under Rule 41(a)(2) and had not adequately addressed the relevant factors. *See* Oct. 24, 2011 Order 1-2.

A

The court first considers whether Johnson is entitled to summary judgment dismissing the claims against Van Wey.

Under Texas law in effect at the time the allegedly defamatory statements were published,[7] "a partner in a limited liability partnership is not personally liable, directly or indirectly . . . for a debt or obligation of the partnership." Tex. Bus. Orgs. Code Ann. § 152.801(a) (West 2008). If the liability arises out of another partner's negligence or malfeasance, however, a partner can be liable if she:

> (1) was supervising or directing the other partner or representative when the error, omission, negligence, incompetence, or malfeasance was committed by the other partner or representative;
>
> (2) was directly involved in the specific activity in which the error, omission, negligence, incompetence, or malfeasance was committed by the other partner or representative; or
>
> (3) had notice or knowledge of the error, omission, negligence, incompetence, or malfeasance by the other partner or representative at the time of the occurrence and then failed to take reasonable action to prevent or cure the error, omission, negligence, incompetence, or malfeasance.

---

[7]Defendants appear to argue in their reply brief that Van Wey cannot be held liable for Johnson's allegedly defamatory statements because, as of September 1, 2011, the Texas statute on liability of partners in limited liability partnerships was amended to remove all exceptions to the general rule that partners in limited liability partnerships are not personally liable for the debts of the partnership. The amendments to the Texas Business Organizations Code, however, are not expressly retroactive and therefore do not govern Everest's claims against Van Wey. *See* Tex. Gov't Code Ann. § 311.022 (West 2005) ("A statute is presumed to be prospective in its operation unless expressly made retrospective.").

*Id.* at § 152.801(b).

Defendants maintain that it is undisputed that Van Wey was not supervising or directing Johnson when she posted the allegedly defamatory statements, nor was Van Wey in any way directly involved in those actions.  They posit that, before Everest filed this lawsuit, Van Wey was unaware that the Everest content had been added to the firm website, and they adduce evidence that Van Wey did not regularly monitor the VW&J website from May 2009 through January 2010.

In response, Everest has presented no evidence that would enable a reasonable trier of fact to find that one of the exceptions prescribed by § 152.801(b) applies.  Instead, it argues that summary judgment would be premature because discovery is ongoing and the VW&J partnership agreement has not been produced.  And it contends that Van Wey's denial that she had knowledge of the specific defamatory statements "strikes [it] as incredible."  Ps. 8/5/11 Br. 9.  With leave of court, defendants have submitted a reply appendix that contains the VW&J limited liability partnership agreement.  In its surreply, Everest argues that pending discovery issues preclude summary judgment in Johnson's favor, but it does not point to any additional evidence that it intends to seek that would establish Van Wey's liability for Johnson's allegedly defamatory statements.

Because Everest has failed to raise a fact issue on the question whether Van Wey is liable for the acts of Johnson, her former law partner, and because Everest has not established under Rule 56(d) that "for specified reasons, it cannot present facts essential to

justify its opposition" to summary judgment, the court grants defendants' summary judgment motion to the extent of dismissing Everest's claims against Van Wey. A Rule 54(b) judgment in her favor is being filed today.

### B

The court also dismisses Everest's claims against VWL. Defendants have adduced evidence that VWL was formed on May 28, 2010 and that its website never contained any of the content of which Everest complains. Everest has presented no evidence that would enable a reasonable jury to find in its favor. And in its motion to drop VWL as a defendant, *see supra* note 5, Everest conceded that there appeared to be no basis on which to recover against VWL. The court therefore grants defendants' motion in this respect.

### VI

Everest moves for partial summary judgment establishing that defendants Johnson, VW&J, and LOJJ maliciously published the false and defamatory statement, "The school is not accredited."[8]

### A

Under Texas law, a statement is not actionable as libel unless the statement is defamatory. "A libel is a defamation expressed in written or other graphic form that tends to . . . injure a living person's reputation and thereby expose the person to public hatred,

---

[8]Everest has adduced evidence that the statement was published on the VW&J and LOJJ websites. Because defendants do not dispute this, the court will assume that Everest has established that Johnson, VW&J, and LOJJ published this statement.

contempt or ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation." Tex. Civ. Prac. & Rem. Code Ann. § 73.001 (West 2011). "To maintain a cause of action for defamation, . . . a plaintiff must prove that the defendant: (1) published a statement 'of and concerning' him; (2) that was defamatory; (3) with the requisite degree of fault with respect to whether it was false." *Neely v. Wilson*, 331 S.W.3d 900, 912 (Tex. App. 2011, pet. filed) (citations omitted).[9] "Courts decide, as a threshold matter, whether or not a publication is capable of a defamatory meaning." *Id.* at 914 (citing *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 114 (Tex. 2000)). The publication that contains the allegedly libelous statement "should be construed as a whole in light of the surrounding circumstances based upon how a person of ordinary intelligence would perceive it." *Turner*, 38 S.W.3d at 114. Where the allegedly libelous statement is "at least ambiguous in [its] meaning," the court cannot conclude, as a matter of law, that the statement is not defamatory. *Beaumont Enter. & Journal v. Smith*, 687 S.W.2d 729, 730 (Tex. 1985), *overruled on other grounds by Casso v. Brand*, 776 S.W.2d 551 (Tex. 1989). Rather, it "is for the jury to

_____

[9]Texas courts have noted:

> [i]mplicit in the elements of defamation, and explicit under chapter 73, is that a true statement is not actionable as libel, although the Texas Supreme Court has not yet definitively resolved, for all fact situations, whether a plaintiff must prove the falsity of a statement as an element of his libel claim as opposed to the defendant having the burden of proving the statement's truth as an affirmative defense.

*Neely*, 331 S.W.3d at 913 (citing Tex. Civ. Prac. & Rem. Code Ann. § 73.005 (West 2005); *Bentley v. Bunton*, 94 S.W.3d 561, 586 n.63 (Tex. 2003)).

determine the meaning which the article would convey to an ordinary person." *Id.* (citing *Denton Publ'g Co. v. Boyd*, 460 S.W.2d 881, 884 (Tex. 1970)).

Texas courts hold that "a statement is not actionable if it is 'substantially true.'" *Neely*, 331 S.W.3d at 915.[10]  "Under the 'substantial truth' doctrine, minor inaccuracies are not actionable as long as the publication's 'gist' or 'sting' is true, and a 'true' statement for these purposes is one that is not more damaging to the plaintiff's reputation than a literally true statement would have been." *Id.* (quoting *McIlvain v. Jacobs*, 794 S.W.2d 14, 16 (Tex. 1990)) (internal citations omitted).  "Similar to the question of defamatory meaning, 'substantial truth' can be decided as a matter of law if the meaning of the publication (i.e., a reasonable person's perception of the publication as a whole) is unambiguous and the material underlying facts are not in dispute; otherwise, the jury must first determine these matters." *Id.* (citing *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995)).

---

[10]The Texas Supreme Court has only applied the "substantial truth" defense in the context of media defendants. *See*, *e.g.*, *Turner*, 38 S.W.3d at 115; *Huckabee v. Time Warner Entm't Co.*, 19 S.W.3d 413, 425-26 (Tex. 2000); *McIlvain v. Jacobs*, 794 S.W.2d 14, 16 (Tex. 1990).  But several Texas courts of appeals have applied the "substantial truth" defense to private defendants, without discussing the distinction between the two types of defendants. *See*, *e.g.*, *Cram Roofing Co. v. Parker*, 131 S.W.3d 84, 90 (Tex. App. 2003, no pet.); *Austin v. Inet Techs., Inc.*, 118 S.W.3d 491, 496 (Tex. App. 2003, no pet.); *Larson v. Family Violence & Sexual Assault Prevention Ctr.*, 64 S.W.3d 506, 515 (Tex. App. 2001, pet. denied).  Everest does not contend that the substantial truth doctrine is inapplicable due to defendants' status as non-media defendants.  The court will assume that, under Texas law, the doctrine applies in this case.

B

Everest argues that the statement, "The school is not accredited," is defamatory because it is untrue.  Everest asserts that at all materials times it has been accredited by the Accrediting Council for Independent Colleges and Schools ("ACICS").  And it posits that "ACICS is a national accrediting agency recognized by the United States Department of Education ('USDOE')," Ps. 11/11/11 Br. 4, which "confirms that ACICS is a reliable authority—recognized by the federal government—concerning the quality of postsecondary education or training offered by educational institutions," *id.* at 12.

In response, defendants[11] do not dispute that Everest was accredited by ACICS or that ACICS has been recognized by the USDOE.  Instead, they maintain that the statement "The school is not accredited" is substantially true because, although Everest is accredited by ACICS, it is not accredited by the Southern Association of Colleges and Schools ("SACS").  According to defendants, ACICS accreditation is "meaningless" because, absent SACS accreditation, "other mainstream universities will not accept transfer of Everest's credits."  Ds. 12/6/11 Br. 3.  Defendants posit that because Everest "lacks meaningful accreditation in that regard, the statement is substantially true."  *Id.* at 3-4.  Defendants maintain that Everest cannot meet its burden of showing falsity as a matter of law, and that it therefore has not satisfied its summary judgment burden.

---

[11]All defendants respond to Everest's motion, although Everest seeks partial summary judgment against only Johnson, VW&J, and LOJJ.

C

Because Everest seeks summary judgment on a claim on which it will have the burden of proof at trial, it must establish beyond peradventure that the statement is defamatory. To do so in the face of defendants' assertion of substantial truth, Everest must at a minimum demonstrate that a reasonable person's perception of the publication as a whole would be unambiguous; otherwise, the jury must decide as a question of fact whether the statement is defamatory. But Everest has not met this burden.

Viewed in isolation, the statement "The school is not accredited," implied that Everest was not accredited by any accrediting agency. But an allegedly defamatory statement must not be evaluated in isolation. *See Turner*, 38 S.W.3d at 114 (holding publication containing allegedly libelous statement "should be construed as a whole in light of the surrounding circumstances based upon how a person of ordinary intelligence would perceive it."); *Neely*, 331 S.W.3d at 914 (stating that "we do not engage in a technical analysis of each statement in isolation, but consider the publication as a whole, viewed not so much by its effect when subjected to the critical analysis of a mind trained in the law, but by the natural probable effect on the mind of the average [viewer]." (internal quotation marks and citations omitted)). A reasonable person considering the websites in question as a whole could have understood that the statement had another meaning: that Everest was not accredited by an agency whose approval would enable Everest students to transfer their credits to mainstream

universities.[12]  For example, the VW&J website stated that for-profit schools like Everest

"misrepresent . . . transferability of credits."  Ps. 11/11/11 App. 42.  The VW&J website also

asserted that "[p]roprietary schools often misrepresent their accreditation status," Ps. 12/1/11

Am. Supp. App. 93.[13]  The LOJJ website made the same assertion, immediately followed by

this statement: "Students spend their time and money on programs that they discover will

not even transfer over to other schools."  *Id.* at 102.  The VW&J website also stated:

"for-profit schools often cite that they are accredited by the national Accrediting Council for

Independent Colleges and Schools (ACICS).  However, many schools and public college

systems disregard this rating and will not recognize credits and degrees from many for-profit

schools."  *Id.* at 94.

Because Everest has failed to establish beyond peradventure that, viewed in the

proper context, the meaning of the statement—that is, a reasonable person's perception of

the publication as a whole—is unambiguous, it is not entitled to partial summary judgment

as a matter of law.  The issue of substantial truth must be resolved by the jury as a fact

question.  Accordingly, Everest's motion for partial summary judgment is denied.

---

[12]Defendants move for leave to file a supplemental appendix and surreply to address
Everest's argument that the "context" of the statement does not suggest that the statement is
substantially true.  The court is able to determine the context, however, from the present
summary judgment record.  Moreover, the court is denying Everest's motion for partial
summary judgment.  Accordingly, it denies as moot defendants' motion for leave to file a
supplemental appendix and surreply.

[13]Everest submitted this evidence in opposition to defendants' motion for summary
judgment, but the court is aware of it because it is deciding both sides' motions together.

*   *   *

For the foregoing reasons, the court grants defendants' motion for summary judgment to the extent of dismissing Everest's actions against Van Wey and VWL, but it otherwise denies defendants' motion.   The court denies Everest's motion for partial summary judgment.   The court also denies Everest's motion for leave to file a surreply, or, alternatively, for oral argument, and defendants' motion to file supplemental appendix and surreply.   A Rule 54(b) judgment in favor of Van Wey and VWL is being filed today.

**SO ORDERED.**

February 27, 2012.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE